# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-5110

**September Term, 2025**

FILED ON: JUNE 30, 2026

LI-CHIEN TSAI,
                    APPELLANT

v.

UNITED STATES OF AMERICA,
                    APPELLEE

Appeal from the United States District Court
for the District of Columbia
(1:23-cv-02392)

Before: WILKINS, RAO, and WALKER, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and the parties' briefs. The Court has fully considered the issues and determined that a published opinion is unnecessary. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). For the reasons stated below, it is hereby:

**ORDERED** and **ADJUDGED** that the judgment of the District Court be **AFFIRMED**.

\*     \*     \*

Appellant Li-Chien Tsai submitted a Freedom of Information Act ("FOIA") request to the Internal Revenue Service ("IRS") seeking "information relative to payments received by the [IRS] for Mr. Tsai from third parties." J.A. 9. After the IRS confirmed no responsive records existed, Tsai filed a complaint in the District Court challenging the adequacy of the search. The District Court granted summary judgment in favor of the IRS and Tsai now appeals that decision. At issue is whether the IRS reasonably interpreted Tsai's FOIA request and performed an adequate search. We conclude that the IRS satisfied its FOIA obligations, and for the reasons discussed below, affirm the judgment of the District Court.

**I.**

On August 11, 2021, Tsai submitted a FOIA request to the IRS requesting "information relative to payments received by the [agency] for Mr. Tsai from third parties" for the year 2001. J.A. 9. The request operated on two levels: first, it detailed Tsai's involvement with the Peking Investment Fund ("Fund")—a tax shelter that had been the subject of a Tax Court case entitled *Peking Inv. Fund LLC v. Commissioner*—and second, it identified several third-party entities that had been previously linked to the Fund and later went on to enter into settlement, non-prosecution, or deferred prosecution agreements with the IRS. J.A. 9–10. Tsai took note of these separate agreements because they obligated the third-party entities to "make payments that would be computed based upon the tax liability of various investors, including Mr. Tsai," which in Tsai's view, were never credited to him. J.A. 9. The request concluded by characterizing the third-party entities as "related parties" based on their "transactional relationship" with Tsai. J.A. 10.

The IRS responded to Tsai's FOIA request on June 21, 2022, explaining that it had conducted a search but identified no responsive records. J.A. 14. Tsai appealed the decision to the IRS's Independent Office of Appeals three months later based on his "sincere belief that the records in question not only exist, but are in the possession of the [IRS] today." J.A. 17. The IRS denied Tsai's appeal and reiterated that the agency had not located any records responsive to his FOIA request. J.A. 191.

Tsai filed this suit in the District Court on August 17, 2023. J.A. 1. The District Court directed Tsai and the IRS ("Parties") to meet-and-confer in accordance with local rules. J.A. 57. The Parties agreed to submit joint status reports and the IRS consented to conduct a supplemental search for responsive records. J.A. 191. Amidst that process, the Department of Justice ("DOJ") attorney assigned to the case contacted Tsai's counsel seeking clarity on the request and asked if Tsai was, in fact, "looking for copies of the third parties' settlements, non-prosecution agreements, or deferred prosecution agreements," which would "entail a different kind of search" from Tsai's request for "information relative to payments received by the [IRS] for Mr. Tsai from third parties." J.A. 133. Tsai's counsel confirmed that the DOJ attorney's "clarification capture[d] what we wanted." J.A. 134.

On June 4, 2024, the DOJ attorney informed Tsai by email that after "thoroughly search[ing] all relevant databases" for the requested information, the IRS "found no responsive records." J.A. 75. The email further explained that Tsai's clarified request pertained to copies of third parties' agreements that "were not reasonably described" and thus "f[e]ll outside the scope of [Tsai's] FOIA request that is the subject of this suit." *Id.* (citation modified). The IRS subsequently moved for summary judgment and the District Court ultimately granted the motion, holding that the agency reasonably interpreted Tsai's FOIA request and that its search was adequate. This appeal followed.

**II.**

The FOIA compels agencies to disclose certain types of records upon request save for the statute's enumerated exemptions. *See* 5 U.S.C. § 552. We review de novo a District Court's grant

of summary judgment in favor of an agency professing compliance with the FOIA. *See Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995).

**A.**

An agency is entitled to summary judgment on a FOIA claim only if it "shows beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Aguiar v. Drug Enf't. Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017) (citation modified). Agencies are obligated to "read FOIA requests as drafted," *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (citation modified), and are neither "required to speculate about potential leads" nor "look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Central to this appeal is whether Tsai's FOIA request was reasonably construed in the first instance. The agency interpreted the request as seeking "information reflecting payments received by the IRS from third parties for Tsai's liabilities" and no other entity's. Appellee's Br. at 17. Tsai counters that this reading is untenable. He argues that had his request been limited to payments submitted for him as apparently construed by the IRS, his 2001 tax liabilities would have been reduced and thus would have obviated any justification for investigating unapplied credits. *See* Appellant's Br. at 23. Instead, Tsai posits that his request was entitled to a "liberal construction" and drafted in a manner that was "broad enough to capture records concerning IRS's settlements with the Fund promoters." *Id.* at 23–24.

We see things differently. The plain text of Tsai's FOIA request sought "information relative to payments received by the [IRS] for Mr. Tsai from third parties" for the year 2001. J.A. 9. The most plausible reading of the request is that it sought taxpayer return information retained by the agency regarding Tsai. The IRS, not unreasonably, took Tsai's request to mean exactly that. Tsai's semantic parsing of terms like "with respect to," *see* Appellant's Br. at 24–25, hardly disrupts that interpretation. *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("The agency was bound to read [the request] as drafted, not as either agency officials or [the requester] might wish it was drafted."); *see also Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 68 (D.D.C. 2017) ("Agencies must interpret FOIA requests liberally and reasonably, but they need not extend the meaning of the request to include things not asked for.") (citation modified). And at any rate, construing the request as expansively as Tsai proposes would have violated the FOIA and the IRS's third-party consent regulations. *See* Appellee's Br. at 19–20; 5 U.S.C. § 552(a)(3)(A); 26 C.F.R. §§ 601.702(c)(4)(i)(E), 601.702(c)(5)(iii). All told, Tsai was the author of his own FOIA request, and the information sought in his request pertained to him alone, not any other entity's records.

That Tsai later clarified the scope of his FOIA request is no more compelling. Tsai's clarification surfaced approximately two years after the IRS completed its search and roughly eight months after this lawsuit commenced. J.A. 107, J.A. 118. Clarifications to a FOIA request neither transform the original request into a different one nor do they impose new obligations on the agency. *See, e.g.*, *Kowalczyk*, 73 F.3d at 388 ("A reasonable effort to satisfy [a] request does not entail an obligation to search anew based upon a subsequent clarification.");

*Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991) ("To require an agency to adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing."); *Gillin v. Internal Revenue Serv.*, 980 F.2d 819, 823 n.3 (1st Cir. 1992) (per curiam) (recognizing that clarification made to a FOIA request "came too late to be relevant, since it amounted to an impermissible attempt to expand a FOIA request after the agency has responded and litigation has commenced"). Tsai's attempts to reframe the terms of his FOIA request are thus unavailing.

**B.**

Having determined the scope of Tsai's request, we now evaluate the adequacy of the IRS's search for responsive records. Under the FOIA, an agency is required to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted). "The adequacy of the search … is judged by a standard of reasonableness," *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and may be established through "reasonably detailed, nonconclusory affidavits describing [the agency's] efforts." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (citations omitted).

The declaration submitted by the IRS illustrates an adequate search. The agency furnished a detailed account of its search, which utilized reasonable methods most likely to uncover responsive records. Retracing those methods proves useful here.

Tsai's FOIA request was first assigned to an initial reviewer, who began searching for responsive records by using the IRS's Integrated Data Retrieval System ("IDRS"), per the standard procedure for identifying taxpayer files like those sought by Tsai. J.A. 98. That initial review yielded no responsive records. *Id.* Next, the initial reviewer enlisted two colleagues to conduct targeted searches across separate databases for responsive records. J.A. 98–99. The first successive reviewer conducted searches using the federal courts' Public Access to Court Electronic Records ("PACER") system to verify any cases related to Tsai. *Id.* The search produced one case previously identified in Tsai's FOIA request—*Peking Inv. Fund LLC v. Commissioner*—yet it too yielded no responsive records. *Id.* The second successive reviewer, notwithstanding the searches already performed, undertook an independent review to ensure completeness. J.A. 99. That second reviewer searched anew the IDRS and PACER systems and queried two additional databases that he believed could surface records related to restitution payments regarding Tsai. *Id.* Still, no responsive records emerged. *Id.* Follow-up reviews of the search performed by a third reviewer validated these results. J.A. 100. The IRS's declaration indicates "what records were searched, by whom, and through what process" with respect to Tsai's FOIA request. *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994). The search was comprehensive and systematic. Accordingly, the IRS fully discharged its FOIA obligations.

It is worth noting briefly that Tsai transmutes the absence of responsive records produced by the IRS into what he deems to be a procedurally deficient search. That is of little import. What constitutes an adequate "FOIA search is generally determined not by the fruits of the search, but

4

by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). The methods used by the IRS to locate responsive records comport with a procedurally sound search, and Tsai's dissatisfaction with its results does not make it any less adequate.

## III.

For the foregoing reasons, we conclude that the IRS reasonably interpreted the scope of Tsai's FOIA request and utilized sufficient methods to implement its search. The decision of the District Court is affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:　/s/
Daniel J. Reidy
Deputy Clerk